There was a motion to cite additional authority, correct? Did you receive that motion? Do you have any objection to granting that motion? Okay. You've been you are aware of the case. Okay. Then otherwise, gentlemen, are you prepared to proceed when you're ready? Good morning. The facts of this case are ugly, but the law is clear. A child pornography conviction requires that a minor be depicted in a pose, posture or setting involving a lewd exhibition. The trial court here expressly found no pose, no posture and no setting. Because the statutory element wasn't met, a child pornography conviction cannot stand. How was this case any different than Sven? On a few different grounds, Your Honor. Firstly, the facts. In Sven, there were multiple cameras. There were multiple hours of recordings. And in that case, there was a 14 year old babysitter and a naked infant in which he was bathing with. Additionally, in Sven, there are images, and this was the catalyst for this court's affirmance, there are images in which only the vagina and the buttocks of the minor are viewed. In other words, that's all that's in the picture. The young lady, not the baby? Yes, Your Honor. So in that instance, the minor was essentially dehumanized. She was reduced to a torso. In that case, obviously, again, there were multiple hours, approximately eight hours, I believe, multiple subjects. This gentleman in Sven had a long history. He had essentially a predator's den that he used to view these images. And recordings. Additionally, in Sven, there was no argument that the expressed elements, the expressed statutory elements were not met. For whatever reason, that argument was never pursued. Obviously, we pursued that in the trial court and we're pursuing that here. So the statutory elements here were simply not met. And if you can convict without a pose, without a posture, without a setting, why include these words in the statute? Well, there are six factors, the DOS factors, and you don't have to have all of them, do you? Well, Your Honor, the DOS factors, obviously, as Your Honor knows, it's from a federal case interpreting a federal... We're stuck with them, though. Lambourne adopts them, so we can't tell the Supreme Court they shouldn't have adopted the DOS factors. I recognize that, Your Honor. I do recognize that. But if I can take a step back and point out the fact that the statute still says what the statute says. And to my knowledge, no argument, or excuse me, no case has encountered this argument that these expressed elements were not met. And what makes this case unique is that there's an express declaration by the fact finder that there's no pose, no posture, and no setting. Of course, that's not relevant to us because our review's denoted, correct? That is true, Your Honor. That is true. But again, this case is unique because you don't have that in any other case, to my knowledge. There's no trial court fact finder expressing these three things. But I recognize, Your Honor, this is a de novo review, and obviously, I'm happy to argue those three elements here, those three factors. But again, to get back to the DOS factors versus the statute, and I recognize this court is limited in what it can do. But again, the statute is what it is, and the factors are what they are. And again, you have this unique situation where these elements were not met. As far as Lamborn goes, Lamborn, the ultimate holding there was nudity without lewdness is not child pornography. And that's holding that should be the catalyst for reversal here. There is no lewdness. Was this conduct distasteful? Deplorable? Certainly. No question. But there's not lewdness. The minor here is essentially mechanically changing clothes. She's not acting seductively. She's not disrobing. She's not acting in any other sexual manner. Do we have to say that we were wrong in Sven, in terms of this peeping Tom aspect of the sixth factor, in order to reverse the trial judge here? I would say no, Your Honor. I recognize in our reply brief that we do make an argument essentially asking that this court reverse or recognize or ask that Sven was wrongly decided. I wouldn't go that far. Abrogate. Yes. I think Sven can be distinguished simply on the facts, as I mentioned earlier. But as far as... To answer Your Honor's question, the peeping Tom perspective, I do believe that under Lamborn, that may not be the correct perspective. The perspective is an objective viewer. And Lamborn stresses those exact words, objective viewer, repeatedly. So I think the peeping Tom perspective, that moves away from what Lamborn asks. Well, it doesn't... Isn't the role of the viewer or the lawyer, if you will, isn't that important? I mean, if you're gonna just be an objective, look at it as an objective viewer, I think as Sven points out, in the newest case that follows Sven, is yeah, maybe an objective viewer, maybe most people looking at that would not react to it. But if somebody was... Were a bit deviant or a lawyer, they're gonna react to it differently. Isn't that relevant? It's relevant, Your Honor, but the problem with that then is, and we cite United States v. Rivera, I know it's a federal case, Second Circuit case. If you go down that road, if you use that perspective, virtually anything in which the person who's photographer or video is being taken, if they're not looking at the camera, that's in essence, a voyeuristic perspective. Well, that depends, but it would depend on who is taking the picture. Certainly. I mean, if it's some photographer who's doing it for an artistic purpose is one thing, but if it's a guy who's doing it to satisfy himself, it's a different perspective, isn't it? It is, Your Honor, but then that's the problem. We get into what's the defendant's intent. That would be inconsistent with Lambert. Right. Right. You can't look to the intent of that. Right. Right. So that's where... And I recognize this is obviously a very difficult area of law, and you're getting into many different factors in terms of the person who's being photographed, the photographer, then you have the viewer, that's a third person. So there's many different factors involved here, but... Well, that's why they set out the six factors that you're trying to avoid in your argument. But I mean, if you look at the first factor, the camera is right on the breasts, the breast area, that weighs in favor of lewdness. If you look at the second factor, it's not typically that area where he sets up a camera, changing them isn't associated with sexual activity, so it weighs against the lewdness finding. The third, where it's not depicted in an unnatural pose, again, against the finding. Her breasts are exposed, that's in favor of the lewdness finding. And then the fifth, the visual depiction does not suggest sexual coyness or willingness to engage in sexual activity, which weighs against, which I have a bit of a problem with that, because how would they know to be coy or suggest some sexual coyness when they don't know they're being taped? Certainly. And then you have the sixth finding, which we kind of talked about. Right. But I mean, again, all of those findings don't have to be met in order to find lewdness, correct? True. It's a case by case basis, and it's the overall determination. I recognize that. The one point I would take, respectfully with Your Honor, is the fact that, again, there's nothing involving sexual conduct or sexual activity. And that is, whether we like it or not, again, recognizing this distasteful context, that's what matters. That's New York v. Ferber, obviously the Supreme Court decision, which requires some sort of sexual conduct or activity by the minor. And it's just, we don't have that here. We have a minor... He didn't have it in Spen either. That's true. That is true. But again, I would say in Spen, at least, you have the image where all you see is her vagina and her buttocks. But I agree with you, Your Honor. Was that in Spen, was that inadvertent, just based upon where the babysitter happenstance positioned herself with respect to the cameras, or was there intentional focusing? It was the latter, Your Honor. It was deliberately... set at waist level where the minor was entering and exiting the bathtub, the jacuzzi. And so, literally, all that is seen, and I hate to use this terminology, but all you can see is just her crotch level, and that was deliberate. So again, Spen is, I think, is an island in a lot of ways, because you have this excessive amount of tapes, this excessive amount of minors, and there so I really would say Spen is an island in that regard. But again, just to go back very quickly, you have... Yes, Your Honor. You said a few minutes ago, we would never have a case where if a victim isn't looking at the camera, that's enough. Or did I do more than... I would say that in terms of someone who doesn't know whether they're being videos or a photographer, taking a picture of, I would say that if they're not looking at the camera, one could make the argument that that's a voyeuristic inference. Correct. And that's... And that could, but wouldn't it... Isn't it always the totality of the circumstances? And here we know the camera was surreptitiously hidden, as opposed to, I have two huge cameras and lights, and you don't look at the camera. I think that's two different scenarios. And here, don't we know a given fact that the camera was hidden? Yes, it was. Yes. So it's really two factors, not looking at the camera, but the camera's hidden. Right. But it's... That brings you back to the voyeuristic. Right. And that's where, again, that Second Circuit case in Rivera, that basically says the Sears catalog could be rendered child pornography if you're looking at it only from a voyeuristic perspective. It's that any innocent tableau could be considered pornographic. How about the position of the victim? How about the safeguards that are set forth in the statute with respect to child victims in cases like this? Isn't this what the intent of the statute was? Your Honor, I think that as far as the voyeurism goes, I think the statute... If the legislature wanted to include an element... Obviously, there's seven subsections, and obviously, it's a very distasteful number of subsections and what those subject matters entail, but there's nothing about voyeurism. And I think if the legislature had wanted to include a subsection eight, any sort of voyeurism of a minor in a bathroom, et cetera, et cetera, they could have included that, and they look at the Video Voyeurism Statute, that specifically says what we have here, surreptitious recording in a changing room. And that statute doesn't differentiate between minors or adults. It's just as any person. Well, they set out places too long, didn't they? Yes, Your Honor. Tanning beds. Right, tanning salon. Yes, locker room. So I think that, again... I don't mean to keep repeating myself, but it's that lack of sexual conduct, that not... It's just a mechanical changing of clothes. And there's no case... We stress this, there's no case in the entire United States where a voyeurism, in terms of a public place, like a locker room, changing room, et cetera, where that's considered child pornography. It's certainly considered video voyeurism and disorderly conduct and a slew of other things, but not child pornography, and it's consistent. And that's with Lambourne. Lambourne is not as explicit as I wish it could have been in terms of photographs three and four, but in photographs three and four in Lambourne, the two girls, their backs are to the camera. And you can see that they're... In one of the individuals, you can see her buttocks, her top is off. That's an essence of voyeuristic photo. But there's no question in Lambourne that the girls were aware they were being photographed. In the other... But I mean, just inferentially, that they know they're being photographed while they're naked. Sure. I would acknowledge that, just with the exception of possibly those pictures, they didn't know at that second they were being pictured. But I agree with you, Your Honor, there was... Probably not a Peeping Tom type setting. That's true, Your Honor. But Lambourne does cite, when they're discussing those two pictures, Gates and Villar. And obviously in Gates and Villar, those are two examples where it's that incidental... Nudity is incidental to the activity. So in Villar, the young boy is sleeping. And the Third Circuit there found his nudity incidental to his activity. His activity was sleeping. And here... And excuse me, in Lambourne then, the incidental activity was talking in the water, was cleaning the sand out of their swimsuits. And that's obviously where we can analogize to this situation. The nudity here, the partial nudity, was incidental to the clothes changing. And that's what differentiates this case from Spen. That's what differentiates this case, frankly, from any other case. And the prosecution has not cited... But in Spen, the nudity was incidental to a nanny innocently giving an infant a bath. True. That's true, Your Honor. So I recognize Spen is... Spen has to go for you to prevail. Yes and no. Again, I would distinguish it on the facts. Right, right. But I also then would distinguish it on the fact that they didn't make some of the legal arguments that we're making here. So if there are no further questions... Thank you, Your Honor. Okay. You will have a chance for... Thank you. Counsel. Come on, Your Honors. The people asked that this court affirm defendants' convictions as the dust factors were found. Going towards defendants' argument as towards Spen. Defendants keep bringing up this whole point of voyeurism and voyeuristic, but that's just what Spen had to file in that particular video of the babysitter bathing the infant. What the second district said... What the court said in that time was that, we believe that the proper inquiry focused on whether the image invites the viewer to perceive the image from some sexualized or deviant point of view. So for Spen, and it's for this case, this image invites the viewer to view it as a voyeur. It's not necessarily true in every single situation, but it is true here. May I ask you a question? Yes, Your Honor. Let's take a... I can't come up with one, but let's assume that there exists in a museum somewhere, a photograph of a minor girl with her breasts exposed. And let's assume that somebody somewhere calls that art and it's hanging in a museum, probably somewhere in New York. But let's assume that, okay? And as we know from Lambourne and New York v. Berber and all these things, simple nudity alone is not child pornography. It would violate the First Amendment to find other women. So now I'm gonna move to Spen and this photograph. And let's assume we have somebody who, with the... How great technology is today, can take that very photo and do some work on it to make it look as if we're looking through a peephole at this girl, let's say, changing at her hotel room. So it's quite clear, we modify this photo that is otherwise not child pornography, and we create this peeping Tom voyeuristic type view. What would your position be on whether, under Spen, we could convert what is otherwise not child pornography into pornography based solely upon that fact? And if your position is that it would be pornography following Spen, do you think that's consistent with FERPA? That's your first point, Your Honor. The sixth factor is whether or not the image is meant to elicit a sexual desire, a sexual response from the viewer. By taking an image of a nude minor girl and taking it in such a manner that to elicit a response from a viewer that is supposed to be a solicit of viewing, that it's secretive, it's unknown, it's just you being a peeping minor, but that's supposed to elicit a sexual response. So under the DOS factor under Spen, that would be child porn. And do you think that's going to square with the First Amendment? It does, Your Honor, because in most instances where a minor child has a picture of being nude, it's not meant to elicit a sexual response from the viewer. There are images of, I believe, of a minor girl in, I believe, Vietnam, that photograph of her being covered in burns, but she's nude. That's not supposed to be a sexual response from that picture. People have pictures of their children bathing or just running around nude because that's what parents do for their children. It's not supposed to elicit a sexual response. It's just meant to depict your children when they're cute and before they get older and become teenagers, Your Honor. So that's the point of, it's supposed to be the, it's not supposed to elicit a sexual response. If there's no, if there's no, I'm sorry, Your Honor, let me back up a little bit. Under the sixth factor, unless the image is meant to elicit a sexual response, it does not weigh towards it being lewd exposition. Let me ask you this question, and the counsel brought this out in their briefs, is here you have a case where the statute of limitations had run for video voyeurism statute. And so then they, he felt they had no place to turn the state other than to go to the child pornography statute, where you got a different statute of limitations. Wouldn't this case, and shouldn't this case have been brought under the Illinois video voyeurism statute? Doesn't fit better under that? This case could be brought under both multiple laws at the same time. And for this instance, it could be a red file of voyeurism as well as the child pornography statute. There are other instances involving traffic violations, which could be more than one traffic violation. Just because someone's act could fall under one criminal act doesn't mean it can't be another as well. Well, I understand that, but if you read the statute, the video voyeurism statute, I mean, the facts of this case fit perfectly, don't they? I mean, it's somebody making a video of somebody who's unknowingly or didn't give consent in a restroom, a tanning bed, a tanning salon, a locker room, a changing room, or a hotel bedroom. Doesn't this seem like those are the facts of this case? You're right, Your Honor, that the fact of this case does fit what is prohibited under voyeurism statute. However, it still also fits under child pornography statute. And how does it fit under the child pornography statute? The video was taken of the minor in which the defendant should have known that the person was a minor at the time. I believe it was his... The video was of his niece, who was there over the summer for her... During her 14th, 15th birthday time. And... Excuse me, Your Honor. And also the video depict a lewd exposition of the minor's breasts, developing breasts. Why is it lewd? I'm sorry, Your Honor? Why is it lewd? Why is it lewd? Another factor is that for the video, the minor was in a person depicted and when she was partially nude, when she was changing, her breasts were in the video itself. And... That would be factors one and two, that's one of the factors six. How the video was... How the video recording was set up, it was put in position secretively by the defendant and meant to put the viewer in the position of a voyeur. And the same thing, same situation in the video voyeurism statute. I mean, if you look at the intent behind the video voyeurism statute, and then discern or apply what the intent is behind the child pornography statute, it seems to me that the child pornography statute was looking at more of a situation where a guy might bring a young girl into a bedroom, so it's in an area where sex is usually taking place. Taking her into a bedroom, setting up the video camera, having sex with her and she's in unnatural poses, or she is doing things that suggest sexual poignance or willingness to engage in sexual activity. In other words, she's knowingly being videotaped. And then you could clearly say it is eliciting a sexual response. Doesn't it seem like that, again, I hate to keep going back to this, but these acts that this guy did was so clearly under the authorized video recording statute, and the statute of limitations kind of pigeonholed the state into what to charge. That's a good argument. What say you? First point, Your Honor. As to your hypothetical, what you're describing falls under one of the other subsections, between subsections of one through six, where in which involves penetration, sexual acts between the minor and the perpetrator. Right? Subsection seven is more of a catch all to the term, more of a catch all for child pornography that doesn't necessarily have to involve a sex act between the minor with another individual or to form a sex act, as long as it's a lewd act itself. As to... I agree with you. I think seven could be a catch all, but then subsequent to seven, they come up with this video voyeurism statute. So if you say it's a catch all, isn't the fact that there's another statute that really fits the elements of this crime better, that that's where you should find? Well, the thing about the video voyeur statute is that it does limit locations. It only limits to, if I recall correctly, tanning salons, locker rooms, change rooms, hotel rooms, restrooms, tanning beds. And that's what we have here, correct? We do have a change room here, but for subsection seven, it doesn't limit the setting or location for when it can apply. It also doesn't require a lewd exhibition of anything. That's true. It just has to have a minor with individual. And that's something really relates to the actual class of felonies, so it's still to be cleared by the state. But the person... The state just needs to prove that the person in the video was a minor, not that necessarily the defendant knew that person was a minor. While here, the state needs to prove that the defendant knew or should know that the person was a minor. Well, the video voyeurism statute isn't limited to minors. That's true. It's not. Do you guys have any more questions? I just wanna recap, then. Your position as to why this is lewd is because there's nudity, a secretive camera, and the video is viewed from the point of view of a voyeur or peeping Tom, and it was conducted in a locker room. Although you don't need that element. Well, you don't need... No, you don't need that element on her developing dress. And because the video... You could see the image from a sexualized or deeming point of view, in this case, a voyeur, and that's what makes the video lewd, which makes this child pornography. And absent the voyeur peeping Tom aspect, this would not be child pornography? With that, it's because the factors are not determinative, but with four factors away... Four factors away against four... Probably would not be. Probably would not be. If it's not so lewd, then it wouldn't be child pornography. That's a lewd position as an element of the offense. So peeping Tom is important. Yes, Your Honor. Is there any other, besides the First District appellate court, is there any other case you're aware of, anywhere in the country, that has given that interpretation to be sixth dose? Other than Sven and Sickle, I don't believe there's any other published opinion. Thank you. People ask that you affirm defense convictions. Thank you. Thank you very much. Counsel, do you wish to reply? Thank you, Your Honors. If nudity alone sufficed, James Davis would be guilty. But as Lamborn and countless other cases instruct, there must be something more. Something in the depiction that is sexually suggestive. And there's simply none of that here. Your Honors asked why this was lewd. And counsel essentially explained, well, because the defendant set this camera up. What the defendant does has zero relevance, zero impact in this analysis. And the prosecution... In the analysis of lewdness. Correct, Your Honor. The video. But confined by the statute of limitations on video voyeurism, the prosecution in its zeal twisted this case into something it's not. Again, mechanically changing clothes is simply not lewdness. There's no case that holds that. And again, the short video of this... The short nature of this clip also is another factor to consider. And again, I recognize Your Honors have commented on this multiple times. But ultimately, Lamborn is the controlling authority. And Lamborn, if you look at their holding, nudity without lewdness is not child pornography. You have to look at it from the perspective of an objective viewer. Those are the factors that warrant a reversal here. And you simply cannot... You cannot align the trial court's findings with the fact that we consider Lamborn and the concerns of New York be fervor, that there must be sexual conduct by the children to be child pornography. And if there are no further questions, again, we would ask the court to reverse for entry of the judgment of the court. Just to be super clear here, your position is sexually suggestive is not equal to the deviant perspective that the state raises. That's correct, Your Honor. That's your position, too, that... I think you may have mentioned this earlier. In this spent case, we're talking about a part of his home... Yes. Versus here where you have a public setting. Yes. And as Your Honor recognized, and I ask you for closing counsel, this is video voyeurism defined. In the opening brief, I specifically set forth the language of the statute, and that is exactly what this is. This is video voyeurism. And again, I recognize that the conduct in this video voyeurism was distasteful, it was sordid. But we're not asking the court to endorse, obviously, this behavior. What we're asking is that the court follow Lamborn, follow New York, be fervor, and reverse. Okay. Thank you for your time. Anything else? Any other questions? Thank you, Your Honor. Gentlemen, thank you both very much for your arguments. There will be a decision in due course, and we are in recess. Thank you, Your Honor.